UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **In re:** | : | **Jointly Administered Under** |
| | : | **Case No. 06-62966-PWB** |
| **INTERNATIONAL MANAGEMENT ASSOCIATES, LLC; INTERNATIONAL MANAGEMENT ASSOCIATES ADVISORY GROUP, LLC; INTERNATIONAL MANAGEMENT ASSOCIATES PLATINUM GROUP, LLC; INTERNATIONAL MANAGEMENT ASSOCIATES EMERALD FUND, LLC; INTERNATIONAL MANAGEMENT ASSOCIATES TAURUS FUND, LLC; INTERNATIONAL MANAGEMENT ASSOCIATES GROWTH & INCOME FUND, LLC; INTERNATIONAL MANAGEMENT ASSOCIATES SUNSET FUND, LLC; IMA REAL ESTATE FUND, LLC; PLATINUM II FUND, LP; EMERALD II FUND, LP;** | : : : : : : : : : : : : : : : : | **Chapter 11** **Judge Bonapfel** |
| Debtors. | : : | |
| **WILLIAM F. PERKINS, in his capacity as Chapter 11 Trustee of International Management Associates, LLC,** | : : : : | |
| Plaintiff, | : : | **Adversary Proceeding** |
| v. | : : | **No. 08-_____** |
| **ERICH G. RANDOLPH,** | : : | |
| Defendant. | : : | |

## COMPLAINT TO AVOID AND RECOVER TRANSFERS

**COMES NOW**, William F. Perkins, in his capacity as chapter 11 trustee (hereinafter "Plaintiff") for the bankruptcy estates of International Management Associates, LLC ("IMA"),

US2000 10258079.6

International Management Associates Advisory Group, LLC, International Management Associates Platinum Group, LLC, International Management Associates Emerald Fund, LLC, International Management Associates Taurus Fund, LLC, International Management Associates Growth and Income Fund, LLC, International Management Associates Sunset Fund, LLC, IMA Real Estate Fund, LLC, Platinum II Fund, LP, and Emerald II Fund, LP, the above-captioned debtors (collectively, the "IMA Entities" or the "Debtors"), and files this Complaint to Avoid and Recover Transfers, alleging as follows:

## JURISDICTION AND VENUE

1.      The Debtors filed voluntary bankruptcy petitions under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101, et seq.) on March 16, 2006 (the "Petition Date"). This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(F), (H) and (O).

2.      Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

3.      Plaintiff is the chapter 11 trustee of the Debtors appointed on April 20, 2006. Previously, on February 17, 2006, the Superior Court of the State of Georgia, Fulton County, appointed the Trustee as the receiver for the Debtors. On February 27, 2006, the United States District Court for the Northern District of Georgia appointed the Trustee as the federal receiver for the Debtors in the civil action Securities and Exchange Commission v. Wright, et al., Civil Action File No. 06-cv-00438-CAP.

4.      Erich G. Randolph ("Defendant") is a resident of the State of Georgia.

- 2 -

5. Defendant may be served with process in this adversary proceeding by mailing a copy of the summons and a copy of this Complaint by first class United States mail, postage prepaid, to the attention of Erich G. Randolph at 159 The Prado N.E., Atlanta, GA 30309 or by such other means as may be permitted by Rule 7004 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

6. Kirk S. Wright ("Wright") formed IMA in 1997 purportedly to manage hedge funds in which investors could purchase equity interests. However, Wright operated IMA and its subsequently created hedge fund affiliates as a Ponzi scheme from IMA's inception, *i.e.* Wright used money provided to IMA by subsequent investors to pay fictitious "returns" to earlier investors. The IMA Entities did not make significant legitimate investments and Wright diverted substantial amounts of money invested into the IMA Entities for his personal use.

7. To induce investment into the IMA Entities, Wright caused the IMA Entities to create and distribute promotional materials and private placement memoranda that falsely represented, among other things, the amount of funds under management, the historical performance of the IMA Entities and the amount of "returns" likely to be earned by investors. Wright also caused the IMA Entities to fabricate investor account statements which, among other things, falsely represented transactions, the amount of funds under management, performance of the IMA Entities and the amount of "returns" allocated to each investor.

8. In addition, Wright caused the IMA Entities to misrepresent to federal and state regulators the amount of funds purportedly under their management. For example, the Form ADVs filed by the IMA Entities with the Securities and Exchange Commission on or about January 25, 2006, state that those entities collectively were managing approximately $185

- 3 -

million. However, the IMA Entities at no time had under management funds approaching this amount. Ultimately, the Ponzi scheme collapsed, receivership and bankruptcy ensued, and investors were left with unpaid principal accounts totaling in the millions of dollars.

## THE AVOIDABLE TRANSFERS

9.      Defendant was an equity investor in one or more of the IMA funds and as such purportedly held undivided equity interests in said funds. During the operation of the IMA Ponzi scheme, various investors, including Defendant, were paid funds by the IMA Entities that purported to be (1) redemptions of principal funds invested, or (2) profits made on principal funds invested. In reality, payments to investors were redemptions of non-existent principal or fictitious profits because the source of these payments was the principal investments of other investors. The payments were made in furtherance of the Ponzi scheme in order to conceal the losses of the IMA Entities and the diversion of assets and to encourage new or further investment. It is inequitable for those investors receiving such payments to retain them to the detriment of remaining creditors and investors.

10.     During the operation of the IMA Ponzi scheme, the IMA Entities made transfers to Defendant totaling not less than $398,162.00 as set forth on the schedule attached hereto as Exhibit A (the "Fictitious Investment Transfers"). Unrelated to any investment in the IMA funds, Wright caused $793,077.04 of the funds of the IMA Entities to be transferred to Defendant for Defendant to use to purchase one or more condominium units in the Museum Tower at Centennial Hill located in downtown Atlanta (the "Non-Investment Transfer", together with the Fictitious Investment Transfers, the "Avoidable Transfers"). The Non-Investment Transfer is set forth on the schedule attached hereto as Exhibit B.

- 4 -

11. It is Plaintiff's contention that all transfers, in whatever form, made to Defendant by the IMA Entities are avoidable and recoverable by Plaintiff. Defendant is on notice that Plaintiff is seeking avoidance of all transfers from the IMA Entities, even if such transfers are not listed on Exhibit A or Exhibit B, and even if the total amount of these transfers exceeds $1,191,239.04. Notwithstanding, Plaintiff only seeks to recover Fictitious Investment Transfers in the amount of $180,000.00. In addition, Defendant is on notice that Plaintiff is seeking to recover $237,153.00 of the Non-Investment Transfer as Defendant has already repaid the balance of the Non-Investment Transfer to the IMA Entities. Defendant is also on notice that in the event he denies liability herein, he has the burden of affirmatively proving that he took the transfers for value and in good faith.

12. The Avoidable Transfers may be categorized as follows:

- The Avoidable Transfer made on or about January 18, 2006 is referred to as the "January 2006 Transfer."

- The Avoidable Transfers made on or after July 1, 2002, including but not limited to the January 2006 Transfer, are referred to as the "UFTA Transfers" because the substantive law governing such transfers is the Uniform Fraudulent Transfer Act as enacted in Georgia.

- The Avoidable Transfers made prior to July 1, 2002 are referred to as the "Pre-UFTA Transfers."

US2000 10258079.6

## COUNT I

### AVOIDANCE AND RECOVERY OF TRANSFER MADE WITHIN ONE YEAR PRIOR TO PETITION DATE PURSUANT TO SECTIONS 548(a)(1) AND 550(a)(1) OF THE BANKRUPTCY CODE

13. Plaintiff incorporates by reference paragraphs 1 through 12 above as if fully set forth herein.

14. The January 2006 Transfer to Defendant was a transfer of an interest in property of the IMA Entities.

15. The January 2006 Transfer was made within the relevant avoidance period under section 548 of the Bankruptcy Code.

16. The January 2006 Transfer was made to Defendant in furtherance of the IMA Ponzi scheme.

17. The January 2006 Transfer was made to Defendant with actual intent to hinder, delay or defraud the creditors of the IMA Entities to which the IMA Entities were or became indebted on or after the date that the January 2006 Transfer was made.

18. The IMA Entities received less than reasonably equivalent value in exchange for the January 2006 Transfer.

19. The IMA Entities were insolvent at the time that the January 2006 Transfer was made or became insolvent as a result of the January 2006 Transfer.

20. At the time of the January 2006 Transfer, the IMA Entities were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the IMA Entities was unreasonably small capital.

21. At the time of the January 2006 Transfer, the IMA Entities intended to incur, or believed that the IMA Entities would incur, debts that would be beyond the ability of the IMA Entities to pay as such debts matured.

22. The January 2006 Transfer to Defendant is avoidable pursuant to section 548(a)(1)(A) or (B) of the Bankruptcy Code and is recoverable by Plaintiff pursuant to section 550(a)(1) of the Bankruptcy Code.

## **COUNT II**

### AVOIDANCE AND RECOVERY OF TRANSFER MADE WITHIN 90 DAYS PRIOR TO THE PETITION DATE PURSUANT TO SECTIONS 547(b) AND 550(a)(1) OF THE BANKRUPTCY CODE

23. Plaintiff incorporates by reference paragraphs 1 through 12 as if fully set forth herein.

24. Alternatively, Defendant was, at the time the January 2006 Transfer was made, a creditor of one or more of the IMA Entities, as that term is defined under the Bankruptcy Code.

25. The January 2006 Transfer was made within 90 days of the Petition Date and was a transfer of an interest in property of the IMA Entities.

26. The January 2006 Transfer was made to or for the benefit of Defendant, a creditor of one or more of the IMA Entities.

27. The January 2006 Transfer was made for or on account of an antecedent debt owed by one or more of the IMA Entities to Defendant before the January 2006 Transfer was made.

28. The January 2006 Transfer was made while the IMA Entities were insolvent within the meaning of section 547 and section 101(32) of the Bankruptcy Code.

- 7 -

29. The January 2006 Transfer enabled Defendant to receive more than he would have received if the bankruptcy cases of the IMA Entities were cases under chapter 7 of the Bankruptcy Code, the January 2006 Transfer had not been made, and Defendant received payment of his debt to the extent provided by the provisions of the Bankruptcy Code.

30. The January 2006 Transfer constitutes an avoidable preferential transfer pursuant to the provisions of section 547(b) of the Bankruptcy Code and is recoverable by Plaintiff pursuant to section 550(a)(1) of the Bankruptcy Code.

## COUNT III

**AVOIDANCE AND RECOVERY OF TRANSFERS MADE ON OR AFTER JULY 1, 2002 PURSUANT TO SECTIONS 544(b) AND 550(a)(1) OF THE BANKRUPTCY CODE AND SECTIONS 18-2-74(a), 18-2-75(a) AND 18-2-77(a) OF THE GEORGIA CODE**

31. Plaintiff incorporates by reference paragraphs 1 through 12 as if fully set forth herein.

32. The UFTA Transfers by IMA to Defendant were transfers of interests in property of the IMA Entities.

33. The UFTA Transfers were made within the relevant avoidance period under section 18-2-79 of the Official Code of Georgia.

34. The UFTA Transfers were made in furtherance of the IMA Ponzi scheme.

35. The UFTA Transfers were made with actual intent to hinder, delay or defraud the creditors of the IMA Entities to which the IMA Entities were or became indebted on or after the dates the UFTA Transfers were made.

36. The IMA Entities received less than reasonably equivalent value in exchange for each of the UFTA Transfers.

US2000 10258079.6

37. The IMA Entities were insolvent on the dates the UFTA Transfers were made or became insolvent as a result of the UFTA Transfers.

38. At the times of the UFTA Transfers, the IMA Entities were engaged or were about to be engaged in a business or transaction for which the remaining assets of the IMA Entities were unreasonably small in relation to the business or transaction.

39. At the times of the UFTA Transfers, the IMA Entities intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

40. The IMA Entities had creditors in existence at the times of the UFTA Transfers and all times up to the Petition Date.

41. The UFTA Transfers are avoidable pursuant to section 544(b)(1) of the Bankruptcy Code and sections 18-2-74(a)(1) and (2), 18-2-75(a) and 18-2-77(a) of the Official Code of Georgia and are recoverable by Plaintiff pursuant to section 550(a)(1) of the Bankruptcy Code.

## COUNT IV

**AVOIDANCE AND RECOVERY OF TRANSFERS MADE PRIOR TO JULY 1, 2002 PURSUANT TO SECTIONS 544(b) AND 550(a)(1) OF THE BANKRUPTCY CODE AND SECTION 18-2-22(2) AND (3) OF THE GEORGIA CODE**

42. Plaintiff incorporates by reference paragraphs 1 through 12 above as if fully set forth herein.

43. The Pre-UFTA Transfers were conveyances of interests in property of the IMA Entities.

- 9 -

44. The Pre-UFTA Transfers were made within the relevant avoidance period under Georgia law.

45. The Pre-UFTA Transfers were made with actual intent to hinder, delay or defraud the creditors of the IMA Entities.

46. At the time of the Pre-UFTA Transfers, Defendant knew or should have known that the Pre-UFTA Transfers were made with actual intent to hinder, delay or defraud the creditors of the IMA Entities.

47. The IMA Entities were insolvent on the dates that the Pre-UFTA Transfers were made.

48. The Pre-UFTA Transfers were voluntary conveyances.

49. The Pre-UFTA Transfers were not for a valuable consideration.

50. The IMA Entities had creditors in existence at the times of each of the Pre-UFTA Transfers and all times up to the Petition Date.

51. The Pre-UFTA Transfers are avoidable pursuant to section 544(b)(1) of the Bankruptcy Code and section 18-2-22(2) and (3) of the Official Code of Georgia and are recoverable by Plaintiff pursuant to section 550(a)(1) of the Bankruptcy Code.

## COUNT V

### RECOVERY FOR BREACH OF CONTRACT

52. Plaintiff incorporates by reference paragraphs 1 through 12 above as if fully set forth herein.

US2000 10258079.6

53. Alternatively, the Non-Investment Transfer was made pursuant to a contract between certain of the IMA Entities and Defendant.

54. The IMA Entities have performed all of their obligations and conditions precedent pursuant to the contact.  Defendant has filed to pay monies due under the contract.

55. Defendant is liable for breach of contract, and Plaintiff seeks to recover all monies due to the IMA Entities under the contract, including any amount of the Non-Investment Transfer that has not been repaid.

## COUNT VI

## QUANTUM MERUIT

56. Plaintiff incorporates by reference paragraphs 1 through 12 above as if fully set forth herein.

57. Alternatively, Defendant is indebted to the IMA Entities for the Non-Investment Transfer.

58. Defendant accepted the Non-Investment Transfer and, thereby, impliedly promised to pay the IMA Entities the reasonable value of the Non-Investment Transfer.

59. Defendant did not pay the IMA Entities the reasonable value of the Non-Investment Transfer.

60. The value of the Non-Investment Transfer is recoverable from Defendant by the IMA Entities pursuant to section 9-2-7 of the Official Code of Georgia.

## REQUESTED RELIEF

**WHEREFORE**, Plaintiff prays that the Court will enter judgment in its favor as follows:

- 11 -

  a. Providing that the January 2006 Transfer be avoided pursuant to sections 548(a)(1)(A) and 548(a)(1)(B) of the Bankruptcy Code;

  b. Alternatively, providing as to the January 2006 Transfer, that such transfer be avoided pursuant to section 547(b) of the Bankruptcy Code;

  c. Providing that the UFTA Transfers be avoided pursuant to section 544(b) of the Bankruptcy Code and sections 18-2-74(a)(1), 18-2-74(a)(2), 18-2-75(a) and 18-2-77(a) of the Official Code of Georgia;

  d. Providing that the Pre-UFTA Transfers be avoided pursuant to section 544(b) of the Bankruptcy Code and sections 18-2-22(2) and 18-2-22(3) of the Official Code of Georgia;

  e. Providing that Plaintiff, pursuant to section 550(a)(1) of the Bankruptcy Code, recover from Defendant the amount and value of the Avoidable Transfers, but not less than $417,153.00, together with prejudgment interest thereon at the legal rate allowed under 28 U.S.C. § 1961 from the date hereof;

  f. Alternatively, providing that Plaintiff recover amounts owed as a result Defendant's breach of contract, but not less than $237,153.00, together with any interest thereon.

  g. Alternatively, providing that Plaintiff recover the value of the Non-Investment Transfer pursuant to section 9-2-7 of the Official Code of Georgia in an amount of not less than $237,153.00, together with any interest thereon.

  h. Providing for an award of costs to Plaintiff; and

US2000 10258079.6

- 13 -

      i.    Providing for such other and further relief as this Court may deem necessary and proper.

Respectfully submitted, this 14th day of March, 2008.

| | |
|---|---|
| **KILPATRICK STOCKTON LLP**<br>1100 Peachtree Street, N.E., Suite 2800<br>Atlanta, Georgia  30309-4530<br>Telephone: (404) 815-6500<br>Facsimile:  (404) 815-6555 | /s/ John W. Mills, III<br>Dennis S. Meir<br>Georgia Bar No. 501100<br>John W. Mills, III<br>Georgia Bar No. 509705<br>Colin M. Bernardino<br>Georgia Bar No. 054879<br><br>Counsel for William F. Perkins,<br>Chapter 11 Trustee |

- 13 -

US2000 10258079.6

## EXHIBIT A

### Erich G. Randolph

| Recipient | Date of Transfer | Method of Transfer/Check # | Amount of Transfer |
|---|---|---|---|
| **Erich G. Randolph** | December 28, 1999 | | $40,000.00 |
| **Erich G. Randolph** | November 24, 2000 | | $28,162.00 |
| **Erich G. Randolph** | August 2, 2002 | Wire | $20,000.00 |
| **Erich G. Randolph** | August 26, 2002 | Wire | $30,000.00 |
| **Erich G. Randolph** | February 7, 2003 | 1675 | $100,000.00 |
| **Erich G. Randolph** | January 18, 2006 | 5518 | $180,000.00 |
| | | **TOTAL:** | **$398,162.00** |

9472807.2

## EXHIBIT B

## Erich G. Randolph

| Recipient | Date of Transfer | Method of Transfer/Check # | Amount of Transfer |
|---|---|---|---|
| **Erich G. Randolph** | April 16, 2003 | Wire | $793,077.04 |

9472807.2